IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Betty J. Summerland | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24 C 6390 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| Constellation Energy Generation, LLC, | ) | |
| Barbara Pohlman, and Triangle | ) | |
| Occupational Medicine, P.A., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Defendant Constellation Energy Generation, LLC's motion to dismiss [15] is denied. Defendants Barbara Pohlman and Triangle Occupational Medicine, P.A.'s motion to dismiss [19] is denied. A status hearing is set for 6/5/25. The parties shall file a joint status report by 6/2/25.

**STATEMENT**

This is the second time Plaintiff, Betty Jo Summerland, has sued these defendants to assert claims of employment discrimination based on her history of mental health issues. In the first case, *Summerland v. Exelon Generation Co* (*"Summerland I"*), Case No. 19 C 1333 (N.D. Ill. Aug. 17, 2021), the parties stipulated to dismiss the case pursuant to settlement, after some of Plaintiff's claims survived the defendants' motions to dismiss. In the present suit, Plaintiff claims that Defendants, Constellation Energy Generation, LLC ("Constellation"), Barbara Pohlman, and Triangle Occupational Medicine, P.A. ("Triangle"), discriminated and/or retaliated against her for complaining of discrimination, in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203; the Genetic Information Nondiscrimination Act ("GINA"), 42 U.S.C. § 2000ff, and the Illinois Genetic

Information Privacy Act ("GIPA"), 410 ILCS 513/1 *et seq.* She also asserts Illinois common-law

claims of intentional infliction of emotional distress ("IIED"), invasion of privacy, and conspiracy.

As in the first suit, Defendants move to dismiss for failure to state a claim. For the following

reasons, the Court denies the motions.

## I.      Background

The following is the relevant factual background, as alleged by Plaintiff in her complaint.

The Court assumes the truth of the allegations and draws all reasonable inferences from them in

Plaintiff's favor.

Plaintiff has been employed by Constellation or its predecessor, Exelon Generation, LLC,[1]

since 2011. She works in a clerical role at the Dresden Generating Station, a nuclear power plant

in Morris, Illinois. Plaintiff suffers from a number of mental or emotional health conditions,

including adjustment, anxiety, and depression disorders. She has received treatment in the form of

medication and therapy, and she has generally received satisfactory performance evaluations

during her employment. However, her mental health issues have caused scheduling and attendance

problems at work, and she has been required to take FMLA leave at times.

The regulations of the Nuclear Regulatory Commission ("NRC") require an operator of a

nuclear power reactor such as Constellation to implement a "fitness for duty" ("FFD") program,

10 C.F.R. § 26.1, which ensures that its employees are "trustworthy and reliable as demonstrated

by the avoidance of substance abuse," that they are "not . . . mentally or physical impaired . . . in

any way" that "adversely affects their ability to safely and competently perform their duties," and

---

[1] Exelon Generation, LLC, spun off its power-generation business into Constellation, an
independent entity, in 2022. For simplicity, and because the distinction between the companies
makes no difference for purposes of this dispute, the Court will refer to Plaintiff's employer as
"Constellation" throughout this Opinion, even when referring to events taking place before 2022.

that any "effects of fatigue and degraded alertness on individuals' abilities to safely and competently perform their duties are managed commensurate with maintaining public health and safety." 10 C.F.R. § 26.23(a), (b) & (e). In assessing whether there has been any violation of an FFD policy or whether a particular employee meets fitness requirements, the employer may rely on a "medical review officer" ("MRO"), a physician who is knowledgeable about the employer's FFD program, can review and interpret test results, and advises and assists the employer "in planning and overseeing the overall FFD program." 10 C.F.R. § 26.183. Dr. Barbara Pohlman, practicing through Triangle, serves as Constellation's MRO.

In *Summerland I*, Plaintiff alleged that Constellation refused to alter her work schedule to permit her to attend sessions with her therapist, which resulted in Plaintiff suffering a panic attack. When she took FMLA leave in November 2017, Plaintiff was told by a nurse at her worksite that her "badge was being pulled," *i.e.*, she was losing access to the facility. *Summerland I*, 455 F. Supp. 3d 646, 654 (N.D. Ill. 2020). While she was out on leave, Dr. Pohlman and a nurse informed her that she had been placed on a "last chance agreement," and her loss of access to her worksite would become permanent, resulting in her termination, if she requested any more FMLA or sick leave due to mental health issues. Dr. Pohlman allegedly told Plaintiff that she was untrustworthy and unreliable, and "warned her that she 'did not work at Walmart.'" *Summerland I*, 510 F. Supp. 3d 619, 625 (N.D. Ill. 2020). Plaintiff eventually regained access privileges, but the defendants allegedly continued to threaten and harass her over her need for mental health treatment. *Id.*

Defendants filed motions to dismiss, which were granted as to some claims but denied as to certain others. *See id.* at 633; 455 F. Supp. 3d at 665. The claims that survived included ADA and FMLA retaliation claims against Constellation, an FMLA retaliation claim against Dr. Pohlman and Triangle, and IIED and civil conspiracy claims against all defendants. Discovery

proceeded on the surviving claims, and the parties reached a settlement agreement. They stipulated to dismiss the *Summerland I* suit in August 2021.

In the present suit, Plaintiff alleges that, following the resolution of *Summerland I*, she continued to make progress with treatment until June 11, 2022, when her son passed away unexpectedly. The tragedy "severely impacted" her, given her emotional and mental health disorders. (Compl. ¶ 28, ECF No. 1.) Constellation placed Plaintiff in its Mandatory Employee Assistance Program and put her on leave.

In February 2023, Constellation sought documentation from Plaintiff's medical providers about her treatment and her potential for returning to work. Plaintiff immediately relayed Constellation's request to her providers, and in March 2023, she provided the nurse at her worksite with documentation of her treatment by Eric Denny, a psychiatric nurse practitioner. The nurse responded that Dr. Pohlman also wanted to see Mr. Denny's "process notes." (*Id.* ¶ 32.) Plaintiff contacted a Constellation human resources representative to object, explaining that the process notes included sensitive personal information she had shared with Mr. Denny in confidence during mental health treatment. Defendants insisted that she provide the process notes. Fearing that maintaining her objection would cost her job, Plaintiff turned over the process notes, although she complained that she believed Defendants were retaliating against her for the *Summerland I* lawsuit.

The process notes contained information about Plaintiff's "family health and social history," including information about "alcohol and controlled substance abuse," which, Plaintiff believes, may have convinced Defendants that Plaintiff was predisposed toward substance abuse problems. (*Id.* ¶ 37.)

In April 2023, Constellation again requested process notes documenting Plaintiff's latest treatment. Mr. Denny objected, telling Plaintiff that he believed "federal medical privacy laws"

4

prohibited him from disclosing "confidential psychotherapy process notes to Defendants," and he told her to so inform them. (*Id.* ¶ 40.) Defendants insisted on receiving process notes, along with a medication review and projected return-to-work date. Plaintiff continued to protest, again complaining that Defendants were retaliating against her. Constellation informed Plaintiff that she should consider Dr. Pohlman "as the 'nuclear God'" whose requests for process notes—or any other information that might shed light on Plaintiff's fitness for duty in a nuclear facility—must be obeyed. (*Id.* ¶ 42.)

Plaintiff was having trouble sleeping, and, in June 2023, due to her "worsening condition," Mr. Denny prescribed Plaintiff Xanax, which seemed to improve her sleep issues. (*Id.* ¶ 44.) A few weeks later, however, Defendants directed her to change health care providers and see a psychiatrist, Dr. James Dyers, instead. Although Plaintiff informed Dr. Dyers that she had been sleeping better since she started taking Xanax, he changed her prescription to another drug, which was less effective. On August 8, 2023, when Plaintiff told him that the new drug hadn't worked, he prescribed Xanax again. On August 31, 2023, Dr. Dyers cleared Plaintiff to return to work. On September 8, 2023, Angela Solis, Plaintiff's therapist, likewise cleared her to return to work. This left clearance by Dr. Pohlman, in her capacity as Constellation's MRO, as the only remaining obstacle to Plaintiff's return to work. Plaintiff's disability benefits ran out on September 12, 2023, requiring Plaintiff to begin using accrued vacation time while she awaited clearance from Dr. Pohlman.

On September 7, 2023, Dr. Pohlman wrote a memo to Plaintiff's employee medical file based on information derived from the confidential process notes Plaintiff had been forced to turn over. According to Plaintiff, the memo contained "several mischaracterized and inaccurate statements" about Plaintiff, as well as sensitive information about her children, including her son's

5

cause of death. (*Id.* ¶ 51.) On September 20, 2023, Constellation required Plaintiff to undergo psychological testing with its in-house psychologist, Dr. Peter Oropeza. About a week later, Dr. Pohlman told Dr. Dyers that she would not find Plaintiff fit for duty unless he terminated her prescription for Xanax. Dr. Dyers protested, stating that Xanax was helping Plaintiff to sleep and depriving her of it would only set her up to fail at work. Dr. Pohlman did not relent, and Dr. Dyers was forced to terminate Plaintiff's prescription for Xanax so she could keep her job.

On October 5, 2023, Dr. Pohlman wrote a memo to Constellation's "psychiatry evaluator," stating that she has a history of alcohol abuse and ongoing problems managing anxiety, depression, and sleep issues. (*Id.* ¶ 58.) Further, she wrote, medical records demonstrated "compliance issues, with both talk therapy and medications, for the treatment of her anxiety, depression, and insomnia." (*Id.*) Dr. Pohlman wrote that Plaintiff's sleep issues have been "complicated" by her "significant daily intake of caffeine and nicotine (despite repeated recommendations to reduce both) and nightly use of controlled substances to induce and maintain sleep (despite repeated recommendations to reduce and eliminate controlled substances)." (*Id.*) Plaintiff denies having any history of alcohol abuse and alleges that she has followed all her providers' recommendations.

On October 9, 2023, Plaintiff asked Constellation for 45 days of unpaid leave while the parties continued to sort out the conditions of her return to work. Constellation agreed to the leave, on the understanding that, if Dr. Pohlman did not clear Plaintiff to return to work by the end of the 45 days, she would be terminated. The following day, Plaintiff complained to Constellation's "Ethics Help Line" that Dr. Pohlman was retaliating against her.

On October 21, 2023, Constellation asked Plaintiff to undergo another psychological evaluation with a third-party psychiatrist, Dr. Nishad Nadkarni, who determined that Plaintiff was fit for duty. On November 8, 2023, Constellation asked Plaintiff to undergo yet another

psychological evaluation with Dr. Oropeza. Dr. Oropeza, having consulted with Dr. Pohlman, told Plaintiff that she would be fired if she "received one more DUI," and he directed her to submit to regular drug and alcohol testing. (*Id.* ¶ 63.) He also recommended undergoing cognitive behavioral therapy and smoking cessation classes, allowing consultants to speak to her psychologist and therapist, and continuing to submit to treatment. Plaintiff had been charged with DUI once, in 2012, and found not guilty. Constellation had required her to undergo "alcohol-use-related treatment," which she completed. (*Id.* ¶ 65.)

Meanwhile, Constellation retained an attorney to investigate Plaintiff's ethics complaint. On February 1, 2024, Plaintiff was informed by a Constellation manager that the investigation had not substantiated her complaint, except as to an allegation that Dr. Pohlman had made negative comments to Dr. Nadkarni concerning *Summerland I.*

In late November 2023, Plaintiff returned to work. Although she had been seeing her therapist, Ms. Solis, since 2017, Constellation now requires her to undergo psychological treatment "other than with" Ms. Solis. (*Id.* ¶ 66.) Plaintiff has been fulfilling her job responsibilities, but she is suffering from lack of adequate sleep, and the deprivation of Ms. Solis's treatment is having a detrimental effect on her mental health. On February 26, 2024, Plaintiff made a formal request to use Xanax again as a reasonable accommodation under the ADA. Constellation denied the request, but on March 18, 2024, it made a "redetermination" of her fitness-for-duty requirements, allowed Plaintiff's providers to prescribe her Xanax, and terminated her mandatory drug and alcohol testing.

## II.     Legal Standard

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P.

12(b)(6). The plaintiff need only plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S.at 556). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the Court accepts the plaintiff's factual allegations as true, it need not "accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The Court may consider, "in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

### III.    Discussion

Defendants' arguments for dismissal fall into two categories. In the first are arguments that federal law governing the operation of a nuclear power plant precludes the Court's consideration of Plaintiff's claims. Specifically, Defendants argue that the complaint should be dismissed because Plaintiffs' claims are barred by the NRC regulation at 10 C.F.R. § 26.189(d), which states that, once an FFD determination has been made as to a particular individual, "[n]either the individual nor licensees [*i.e.*, employers who operate nuclear facilities] and other entities may seek a second determination of fitness" for duty. Dr. Pohlman and Triangle also move to dismiss the complaint under *Department of Navy v. Egan*, 484 U.S. 518, 527 (1988), and its progeny, which

bar any challenge to any employment action that entails reviewing the substance of a security-clearance determination.

In the remaining arguments, Defendants assert that Plaintiff's complaint does not contain factual allegations that adequately state a claim to relief. Defendants argue that the statutory employment discrimination and retaliation claims should be dismissed because Plaintiff did not suffer any adverse employment action. Further, Dr. Pohlman and Triangle argue that these claims should be dismissed as to them because neither of them qualifies as Plaintiff's "employer" under these statutes. Finally, Defendants argue that the state common-law claims should be dismissed because Plaintiff does not plead sufficient facts to state a plausible claim of intentional infliction of emotional distress ("IIED"), invasion of privacy, or conspiracy.

### A. 10 C.F.R. § 26.189(d) and *Egan*

Constellation raised arguments under section 26.189(d) and *Egan* in *Summerland I*, and the court rejected them. First, the court explained that section 26.189(d) does not apply to courts and, therefore, its "prohibition of 'second determination[s] of fitness' [did] not preclude the court from hearing Summerland's claims." *Summerland I*, 455 F. Supp. 3d at 658. The court cited an analogous decision on a similar issue in *Exelon Generation Co., LLC v. Local 15, International Brotherhood of Electrical Workers, AFL-CIO*, 676 F.3d 566, 572-73 (7th Cir. 2012), in which the Seventh Circuit concluded that a regulatory provision stating that "[o]nly a licensee shall grant an individual unescorted access" to a nuclear facility did not deprive labor arbitrators of the power to hear claims concerning unescorted access. Second, the court explained that *Egan* does not apply because Plaintiff's complaint did not "say anything about a government-issued security clearance," nor are the applicable NRC regulations pertaining to building access materially analogous to a

9

security clearance, which permits "access [to] *classified information*—not . . . *buildings*." *Summerland I*, 455 F. Supp. 3d at 656.

This Court sees no basis for a different decision now; indeed, the Court agrees with the reasoning in *Summerland I* as to both of these issues. Considering the language of section 26.189(d) in full and in context of the surrounding provisions, the Court does not read it to apply to court proceedings. Section 26.189(d) governs certain actions of operators of nuclear facilities, their employees, and "other entities" that "assist [them] in some fashion," *Summerland I*, 455 F. Supp. 3d at 657, but only as among themselves, not in relation to litigation that may arise among them. *See Exelon*, 676 F.3d at 572. And *Egan* does not apply because this case is not about security clearance.

Defendants argue that the analysis of the section 26.189 issue in *Summerland I* is not applicable to this case because it focused on the proper interpretation of the "other entities" term. The Court disagrees. Defendants miss the forest for the trees. While it is true that the *Summerland I* court discussed the "other entities" term at length, it framed the overarching issue as whether "resolving Summerland's claims would require the court to review the merits of Defendants' assessment of her fitness—or, as the regulation puts it, perform 'a second determination of fitness'" that the regulation forbids. *Summerland I*, 455 F. Supp. 3d at 657. The court cited Constellation's brief, in which it made arguments similar to the ones it makes now, citing some of the same authorities. Mem. in Supp. of Renewed Mot. to Dismiss, *Summerland I*, Case No. 19 C 1333 (N.D. Ill. Jul. 16, 2019), ECF No. 48 at 12-16. And, Constellation's arguments notwithstanding, the court concluded that "the regulation's prohibition of 'second determination[s] of fitness' [did] not preclude the court from hearing Summerland's claims." *Summerland I*, 455 F. Supp. 3d at 657. While the decision emphasized a different link in the chain of reasoning, the issue

10

was the same: whether section 26.189 bars courts from hearing claims that concern a "determination of fitness." The court concluded that it doesn't, and this Court agrees with both its reasoning and its conclusion.

### B. Statutory Claims and Adverse Employment Action

Defendants' argument that Plaintiff did not suffer any adverse employment action that was sufficiently serious to give rise to liability under the FMLA, ADA, GINA, or GIPA likewise retreads ground already covered in *Summerland I*. There, the court concluded that Plaintiff stated a claim of FMLA retaliation against Constellation because she alleged that it cut off her access to her worksite for long periods and threatened to terminate her, and "[t]hose actions qualify as adverse employment actions for purposes of her FMLA retaliation claim because it is plausible that they would dissuade a reasonable employee from invoking the FMLA." *Summerland I*, 455 F. Supp. 3d at 659. For similar reasons, the court concluded that Plaintiff stated a claim of ADA retaliation, explaining that "the threat Summerland faced was specifically targeted at her mental health vulnerabilities, such that it was one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Id.* at 663. Plaintiff makes similar allegations now, and the Court fails to see why a different decision is required. Nor does the Court see any reason why a different conclusion is necessary under GINA or GIPA, which Defendants do not analyze in any detail.

### C. Statutory Claims and Whether Dr. Pohlman and Triangle Are "Employers"

Dr. Pohlman and Triangle argue that they do not meet the definition of "employer" under any of the statutes that form the basis for Plaintiff's retaliation/discrimination claims. Although some of their arguments are powerful and may spell trouble for Plaintiff down the road, they do not establish that dismissal is warranted at this early stage.

### 1. FMLA

The court in *Summerland I* considered whether Plaintiff stated a claim of FMLA retaliation, and it concluded that Plaintiff had plausibly alleged that Dr. Pohlman and Triangle qualified as "employers" under the FMLA. The FMLA defines "employer" to include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). Courts have interpreted this broad definition to mean that an individual can be liable for an FMLA violation if she has "'supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation.'" *Summerland I*, 510 F. Supp. 3d at 626 (quoting *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987) (interpreting similar definition of "employer" under the Fair Labor Standards Act, 29 U.S.C. § 203(d))); *see Katz v. Nw. Orthopaedics & Sports Med. Ltd.*, No. 18 CV 4515, 2020 WL 1986965, at *9 (N.D. Ill. Apr. 27, 2020) ("Because the statutes define employer the same way, courts in this district analyze individual liability under the FMLA using the *Riordan* test.") (citing cases). The court reasoned in *Summerland I* that Plaintiff had alleged that Dr. Pohlman had the power to deny Plaintiff access to her worksite, which was "tantamount to termination," and "[t[he power to terminate is quintessential supervisory authority." 510 F. Supp. 3d at 626. Therefore, the court concluded, "at least on the pleadings, . . . [Dr.] Pohlman and Triangle . . . qualify as employers under the FLMA." *Id.* The Court finds no flaw in this reasoning and adopts it here.

### 2. ADA and GINA

The ADA and GINA define "employer" differently from the FMLA. Under these statutes, an "employer," as relevant here, is "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such [a] person." 42 U.S.C. § 12111; *see* 42 U.S.C. § 2000ff(2)(B)(i) (adopting the materially identical definition of "employer" set forth at 42 U.S.C.

12

§ 2000e(b)). The Seventh Circuit has interpreted this language to mean that "individuals who do not otherwise meet the statutory definition of 'employer' cannot be liable under the ADA," the "any agent" language in the definition notwithstanding. *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1995). Dr. Pohlman and Triangle argue that, given the similarity of the definitions, the same logic dictates the same conclusion as to GINA.

Dr. Pohlman and Triangle are correct that, under *AIC Security*, 55 F.3d at 1276, they cannot be held liable unless they meet the statutory definition of employer, including by having at least fifteen employees. Their problem is that the Court cannot properly reach any conclusion as to the whether they meet that definition on the pleadings. *See Moore ex rel. S.M. v. I-55 Truckstop Rest., Inc.*, No. 24 CV 10385, 2025 WL 588636, at *2 (N.D. Ill. Feb. 24, 2025); *Silic v. BBS Trucking, Inc.*, No. 12 C 6557, 2013 WL 942207, at *2-3 (N.D. Ill. Mar. 11, 2013). Resolution of that issue will have to await summary judgment or a later stage of the case.

### 3. GIPA

GIPA defines "employer" as "the State of Illinois, any unit of local government, and any board, commission, department, institution, or school district, any party to a public contract, any joint apprenticeship or training committee within the State, and *every other person employing employees within the State*." 410 ILCS 513/10 (emphasis added). Given the circularity of this definition, Plaintiff argues that the Court should "interpret[] the word 'employer' in its common-law sense," and the most important factor under the multi-factor common-law test is whether the alleged employer "has the right to control the manner and method in which the work is to be carried out." *See Landers-Scelfo v. Corp. Off. Sys., Inc.*, 827 N.E.2d 1051, 1060 (Ill. App. Ct. 2005). Plaintiff alleges that Dr. Pohlman and Triangle control Plaintiff's access to her worksite, without which she cannot work and would be discharged, and therefore, she argues, it is at least plausible

13

that Dr. Pohlman and Triangle qualify as "employers" under GIPA. *See Gunterberg v. B & M Transp. Co.*, 327 N.E.2d 528, 533-34 (Ill. App. Ct. 1975) ("An important, if not necessary, corollary of the right to control is the power to discharge or its equivalent.").

Plaintiff's argument does not strike the Court as particularly promising. The Seventh Circuit has explained that "regulatory authority" over a worker is not synonymous with "employment." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) (citing *Callahan v. City of Chicago*, 813 F.3d 658, 660-662 (7th Cir. 2016)). Nor does control over working conditions at a certain facility necessarily establish employment of all those subject to those conditions. *See Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487, 492-93 (7th Cir. 1996) (hospital that revoked private anesthesiologist's staff privileges was not his "employer" for purposes of Title VII, as analyzed based on the traditional employee/contractor distinction). Plaintiff has not cited cases in which someone in a role like Dr. Pohlman's was found to be an employer in the "common-law sense," and the Court can only imagine how Dr. Pohlman's role as, essentially, a medical advisor translates into "employing employees."

At the pleading stage, however, courts are meant to give plaintiffs "'the benefit of imagination.'" *ReceiverShip Mgmt., Inc. v. A.J. Corso & Assocs., Inc.*, No. 19-CV-01385, 2021 WL 1222897, at *15 (N.D. Ill. Mar. 31, 2021) (quoting *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)). The Court is on uncertain terrain both legally and factually, which counsels against dismissing Plaintiff's claim at the pleading stage. *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015) (quoting *Metts v. Murphy,* 363 F.3d 8, 11 (1st Cir. 2004)) ("[Until] the law 'firm[s] up' in unsettled areas, . . . plaintiffs should be given 'an opportunity to develop evidence before the merits are resolved.'"); *Chapman.*, 875 F.3d at 848 ("[I]t is manifestly inappropriate for a district court to demand that complaints contain all legal

elements (or factors) plus facts corresponding to each."); *see Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 517 (7th Cir. 2015). And the Seventh Circuit has warned that federal courts must "proceed with caution in making pronouncements about state law, especially given that such pronouncements inherently involve a significant intrusion on the prerogative of the state courts." *REXA, Inc. v. Chester*, 42 F.4th 652, 668 (7th Cir. 2022) (internal quotation marks omitted). The proper interpretation of "employer" in GIPA may well differ from the interpretation of the same term in other contexts. *See, e.g.*, *Muzaffar v. Aurora Health Care S. Lakes, Inc.*, 985 F. Supp. 2d 875, 879 (E.D. Wis. 2013) (diverging from Title VII cases in determining which entity was the employer for purposes of a whistleblower claim under EMTALA, 42 U.S.C. § 1395dd). As the court explained in *Summerland I* in connection with a different claim, allowing a claim to proceed past the pleading stage, with the understanding that the defendants may renew their argument at summary judgment, may be "the prudent course" when the governing law is unsettled and the claim will not significantly add to the burden on the defendants in discovery. *Summerland I*, 510 F. Supp. 3d at 631-32. Again, the Court will follow *Summerland I*'s lead.

### D. Illinois Common-Law Claims

Defendants argue that Plaintiff fails to state a claim under Illinois common law for intentional infliction of emotional distress, invasion of privacy, or conspiracy. First, her IIED claim survived dismissal in *Summerland I*, and, again, the Court fails to see why a different decision is required now. Defendants argue that Plaintiff has not alleged that their misconduct was extreme or outrageous or undertaken with intent to inflict distress, but the court explained in *Summerland I* that Plaintiff had alleged that Defendants had threatened her and interfered with her treatment, despite knowing that she was "particularly susceptible to emotional distress," given her "known

emotional disorders." 510 F. Supp. 3d at 629. The same can be said in this case. The motions to dismiss are denied as to the IIED claim.

Defendants argue that the invasion of privacy claim should be dismissed because there is no invasion or intrusion in asking for information that Plaintiff voluntarily disclosed, and whether she did so under duress, as she now claims, is irrelevant. "Traditionally, the tort of invasion of privacy encompassed four theories of wrongdoing: intrusion upon seclusion, appropriation of a person's name or likeness, publicity given to private life, and publicity placing a person in a false light." *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1192 (7th Cir. 2021). The Illinois Supreme Court has explained that, when the theory is intrusion upon seclusion, the "core of this tort is the offensive prying into the private domain of another." *Lovgren v. Citizens First Nat. Bank of Princeton*, 534 N.E.2d 987, 988-89 (Ill. 1989). Defendants do not cite authority squarely establishing that a claim for intrusion upon seclusion is unavailable to someone in Plaintiff's circumstances, and the Court is aware of at least some authority that may suggest otherwise. *See Lunsford v. Sterilite of Ohio, L.L.C.*, 165 N.E.3d 245, 260 (Ohio 2020) (Stewart, J., dissenting) (citing cases reasoning that a choice between permitting an intrusion into private matters and giving up one's job is "tantamount to no choice at all"). Again, as the Court explained in connection with the GIPA claim, the dearth of on-point Illinois authority in the parties' briefs counsels against making a definitive ruling at the pleading stage.

Finally, Defendants argue that Plaintiff fails to state a claim for conspiracy because she has not alleged any underlying tortious acts on which the conspiracy claim might be predicated. As the above discussion demonstrates, Plaintiff has alleged a number of such acts, and that is enough to survive Defendants' motions to dismiss. *See Summerland I*, 510 F. Supp. 3d at 631.

For the foregoing reasons, Defendants' motions to dismiss are denied.

16

**SO ORDERED.**                                    **ENTERED: April 30, 2025**

_____
**HON. JORGE ALONSO**
**United States District Judge**